1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   RICHARD DANIEL MARTIN,                ) Case No.: 1:14-cv-01134 - JLT
                                           )
12              Plaintiff,                 ) ORDER GRANTING DEFENDANT'S MOTION
                                           ) FOR SUMMARY JUDGMENT AND DIRECTING
13        v.                               ) ENTRY OF JUDGMENT IN FAVOR OF
                                           ) DEFENDANT, CAROLYN W. COLVIN, ACTING
14   CAROLYN W. COLVIN,                     ) COMMISSIONER OF SOCIAL SECURITY, AND
     Acting Commissioner of Social Security, ) AGAINST PLAINTIFF RICHARD MARTIN
15                                         )
16              Defendant.                 )
                                           )
17   _____      )

18        Plaintiff Richard Daniel Martin asserts he is entitled to supplemental security income under

19   Title XVI of the Social Security Act.  Plaintiff argues the administrative law judge ("ALJ") erred in

20   evaluating the credibility of his subjective complaint.  Because the ALJ identified clear and convincing

21   reasons to support the adverse credibility determination, the administrative decision is **AFFIRMED**,

22   and Defendant's motion for summary judgment (Doc. 19) is **GRANTED**.

23                           <u>**BACKGROUND**</u>

24        On May 21, 2013, Plaintiff filed an application for benefits, in which he alleged disability

25   beginning April 20, 2013.  (Doc. 11-3 at 12)  The Social Security Administration denied the application

26   at the initial level and upon reconsideration.  (*Id.*; Doc. 11-5 at 3, 12) Plaintiff requested a hearing, and

27   testified before an ALJ on March 5, 2014.  (*Id.* at 12, 26)  The ALJ determined Plaintiff was not

28   disabled under the Social Security Act, and issued an order denying benefits on March 14, 2014.  (*Id.* at

                                            1

12-20)  Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on May 22, 2014.  (*Id.* at 2-7)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

On July 18, 2014, Plaintiff initiated this action for judicial review of the ALJ's decision by filing a complaint pursuant to 42 U.S.C. § 405(g).  Plaintiff filed his opening brief in the matter on May 7, 2015.  (Doc. 18)  Defendant filed a brief in opposition on June 5, 2015.  (Doc. 19)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

1   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

3   the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

4   gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

5   ## ADMINISTRATIVE DETERMINATION

6   To achieve uniform decisions, the Commissioner established a sequential five-step process for

7   evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires

8   the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of

9   alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the

10  listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had

11  the residual functional capacity to perform to past relevant work or (5) the ability to perform other work

12  existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial

13  and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

14  **A.      Relevant Medical Evidence**

15  On April 20, 2013, Plaintiff was admitted into the hospital on a psychiatric "5150 hold" as a

16  danger to himself after he called 911. (Doc 11-8 at 6; Doc. 11-9 at 4)  Plaintiff reported "his wife

17  recently left… and took the kids," after which he tried to cut his own neck.  (Doc. 11-8 at 6) Dr. Bauer

18  noted Plaintiff had a "very small" and superficial cut on his neck, and exhibited a depressed mood and

19  suicidal ideation.  (*Id.* at 6-7)  On April 21, Plaintiff reported he no longer had suicidal ideations, and

20  denied having any hallucinations.  (*Id.* at 13)  He was given a urine drug screen and HCG test, and

21  tested positive for methamphetamines.  (*Id.* at 17)  Plaintiff admitted he had a history of using

22  methamphetamines, cannabis, heroin, and cocaine.  (*Id.* at 14-15)  He was discharged from the 5150

23  hold on April 22, and referred to Fresno County Department of Behavioral Health.  (*Id.* at 12, 21)

24  On April 30, 2013, Dr. Lois Ratzlaff noted Plaintiff had been diagnosed with "adjustment

25  disorder with depressed mood."  (Doc. 11-8 at 21)  Dr. Ratzlaff noted Plaintiff reported he "was under

26  the influence of methamphetamine and [alcohol] at the time of the [suicide] attempt."  (*Id.* at 22)  He

27  reported he his family was "evicted from their apartment because of the constant flow of guests who

28  partied at the apartment," and "his wife separated from him and took their 4 children with her."  (*Id.*)

3

1   In addition, Dr. Ratzlaff noted Plaintiff admitted he was "drinking 3 bottles of tequila every day" and

2   used "'a lot' of meth daily for the last 8 to 10 years; he didn't have to pay for it." (*Id.*) Plaintiff

3   described the suicide attempt as a "wake up call," and said that though he had suicidal thoughts "about

4   twice a week," he was "not concerned about having the thoughts and state[d] he will never attempt

5   suicide again." (*Id.*) Dr. Ratzlaff found "no 5150 criteria and . . . no need for [Department of

6   Behavioral Health] services. (*Id.*)

7        Dr. Elke Kurpiers performed a psychological evaluation on June 28, 2013. (Doc. 11-8 at 30)

8   Plaintiff told Dr. Kurpiers that he was "really depressed." (*Id.*) He reported that "he started drinking

9   and using marijuana at age 16," began using meth at age 18, "and later [used] crystal meth and heroin."

10  (*Id.* at 31) Plaintiff estimated that before his attempted suicide, "he was drinking as much as three

11  bottles of tequila and a 12 pack of beer every day…[and] he smoked marijuana and was using meth on

12  a daily basis." (*Id.*) He told Dr. Kurpiers he did not use alcohol or drugs after his hospitalization. (*Id.*)

13  Further, Plaintiff told Dr. Kurpiers that he was able to read and write at a fourth grade level, and

14  graduated from high school after taking classes for learning disabled students. (*Id.* at 30) He told Dr.

15  Kurpiers he had previously worked "several jobs, including working in security and fast food," but "he

16  was unable to do reports when he worked in security." (*Id.*) Plaintiff said he "would get into

17  arguments with his bosses… because he lacked motivation to work and preferred to be at home." (*Id.*

18  at 32) Because he was not currently working, Plaintiff said he spent his days "watching television,"

19  helping with chores such as laundry, and playing with his niece and nephews. (*Id.* at 31-32)

20        Dr. Kurpiers administered the Wechsler Adult Intelligence Scale- 4th Edition (WAIS) and

21  Wechsler Memory Scale-4th edition (WMS). (Doc. 11-8 at 30, 32-33) Dr. Kurpiers determined

22  Plaintiff's full scale IQ score was 74, which was in the "[b]orderline range." (*Id.* at 32) In addition,

23  Dr. Kurpiers found Plaintiff's "[m]emory assessment scores [were] slightly higher than intellectual

24  scores," and were in the low average to average ranges. (*Id.* at 33, 34) Dr. Kurpiers opined:

25      A.  The claimant has moderate restrictions of daily activities due to depressed mood and
            associated lack of energy.
26      B.  He has mild to moderate difficulties in maintaining social functioning.
        C.  He has mild to moderate difficulties of concentration, persistence and pace.
27      D.  He may experience repeated episodes of emotional deterioration in work-like situations
            depending on his personal situation.
28

4

(*Id.* at 34)  Dr. Kurpiers concluded Plaintiff had "the ability to understand, carry out and remember simple verbal instructions;" "to respond appropriately to usual work situations;" and "to deal with changes in routine work setting." (*Id.* at 34-35)  However, she believed Plaintiff's low self-confidence and "history of getting defensive with his supervisors . . . would interfere with his ability to consistently respond appropriately to co-workers, supervisors and the public." (*Id.* at 35)  Further, Dr. Kurpiers believed Plaintiff "remain[ed] in an acute emotional crisis, with risk of relapse." (*Id.*) She gave Plaintiff a GAF score of "60 to 62"[1] and believed his prognosis was "[f]air to good, with treatment for [alcohol and other drug abuse] and mental health issues."  (*Id.*)

On July 24, 2013, Dr. Bugg noted Plaintiff "did not allege any physical problems" in his application, although he told Dr. Kurpiers he had headaches and back pain.  (Doc. 11-4 at 7) Dr. Bugg also noted Plaintiff was able to help with household chores and did not take any medication for physical pain. (*Id.*)  He concluded Plaintiff's physical impairments were "non severe." (*Id.* at 7)

On November 6, 2013, Dr. Eugene Campbell reviewed the record and found Plaintiff's medically determinable impairments could produce his pain or other symptoms, but the record did not support Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms." (Doc. 11-4 at 34)  According to Dr. Campbell, Plaintiff's credibility was undermined by his activities of daily living, as well as "[t]he location, duration, frequency and intensity of . . . [his] pain and other symptoms."  (*Id.*)  Dr. Campbell determined that Plaintiff was "not significantly limited" with the ability to understand, remember, and carry out "very short and simple instructions; and was "moderately limited" with the ability to maintain concentration and attention.  (*Id.* at 35-36)  He opined Plaintiff was able to perform simple, repetitive tasks "with limited social contact."  (*Id.* at 33)

**B.    Administrative Hearing Testimony**

Plaintiff testified that he took Special Education classes in school, as well as Speech and RSP classes.  (Doc. 11-3 at 29-30)  Plaintiff stated he had problems reading and writing, and preferred not

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  GAF scores of 51-60 indicate "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* at 34.  GAF scores of 61-70 indicate "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.*

5

to try because he had "to ask everybody how to spell the words." (*Id.* at 30) He reported he had

completed the twelfth grade—although he was not sure if he received a diploma or a certificate of

completion—and had no further education, including vocational training. (*Id.* at 29, 31)

Plaintiff reported he held several jobs, but he never worked for more than two to three hours at

a time. (*Id.* at 32, 38) He explained he worked security positions for Contemporary Services and Burns

International, which required him to "walk around . . . to watch parked cars" and sit in a post. (*Id.* at

32) Plaintiff said he "was fired from one of the jobs for falling asleep." (*Id.* at 37) He reported that he

didn't "like listening" and was suspended three times for "not following directions." (*Id.* at 37-38)

He also recalled working at Jack-in-the-Box, where he cooked hamburgers under the

supervision of his sister. (Doc. 11-3 at 32, 42) Plaintiff said his sister was "scary" and "[s]he would

get [him] at home" if he did not listen, so Plaintiff was disciplined only one time. (*Id.* at 46) Plaintiff

said he was unable to learn how to work as a cashier because he "couldn't read the words or see the

things, because [he] was supposed to be wearing glasses" and "didn't understand the buttons." (*Id.* at

33, 45) Plaintiff believed he was unable to work, explaining: "Every time I go to try [to] fill out the

paperwork, I can't do it. I can only understand half the stuff they ask [me] to fill out." (*Id.* at 33)

He testified that he tried to kill himself because his wife left and he "was drinking and doing

narcotics." (Doc. 11-3 at 34) Plaintiff said he had stopped all drugs and alcohol after leaving the

recovery center. (*Id.*) He reported that he never taken any medication for depression, and looked for a

therapist but it cost too much for him to see one or receive treatment. (*Id.* at 34, 40) Plaintiff said he

was told about meetings at the recovery center, but he did not attend. (*Id.* at 35) Plaintiff reported that

he still thought about committing suicide "a lot." (*Id.* at 41)

Further, Plaintiff reported he had back pain, and that he was told previously that his spine "rubs

bone to bone." (Doc. 11-3 at 43) Plaintiff's counsel informed the ALJ that his office had requested

records from the doctor, but the documents were dated "well before" the alleged onset date, and were

"archived, stored, and then no longer retrievable by the provider." (*Id.*)

He testified his daily activities involved sleeping, walking around, and watching television.

(Doc. 11-3 at 44) Plaintiff testified that he had minimal household duties, and he would "only pick up

dog poop." (*Id.*) He explained that when he washed the dishes, his family "didn't like it because they

say they're still greasy." (*Id.*)  He said his mom also would not allow him to mow the lawn because he had "a habit of breaking [her] lawn mower." (*Id.*)

Vocational Expert Thomas Dachelet ("VE") testified after the Plaintiff at the hearing.  (Doc. 11-3 at 48)  The ALJ asked the VE to consider a "a hypothetical individual of the claimant's age and education" assuming the worker "is limited to performing only simple routine tasks, with superficial interaction with co-workers, supervisors, and the public." (*Id.*)  The VE testified that an individual with such limitations could not "perform any of the claimant's past work" as a security officer or fast food worker. (*Id.*) However, the VE testified that this individual would be able to perform other unskilled, light work such as a packing floor worker, DOT 920.686-026; a garment sorter, DOT 222.687-014; and a package operator, DOT 920.685-082.  (*Id.* at 49)

Next, the ALJ asked the VE to consider the "same individual," but who "would be off-task 25 percent of the time." (Doc. 11-3 at 49)  With this additional limitation, the VE opined that there would not be any jobs "as normally found" in the national economy.  (*Id.*)  Similarly, the VE believed there would not be jobs available for a person who was "off task . . . 15 percent of the time" but would also "have repeated episodes of…deterioration…in work life situations."  (*Id.* at 50)

## C.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the alleged onset date of May 21, 2013. (Doc. 11-3 at 14)  Second, the ALJ found Plaintiff "has the following severe impairments: depressive disorder, learning disorder and polysubstance dependence." (*Id.*)  These impairments did not meet or medically equal a listed impairment.  (*Id.* at 14-15)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels. He is capable of performing simple repetitive tasks, with superficial interaction with coworkers and supervisors.

(*Id.* at 16)  With this residual functional capacity, the ALJ found Plaintiff was able to perform "jobs that exist in significant numbers in the national economy," including work as a packing floor worker, garment sorter, and package operator.  (*Id.* at 19)  Accordingly, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 20)

*///*

7

**DISCUSSION AND ANALYSIS**

Plaintiff's sole argument in his appeal is that the ALJ failed to properly evaluate the credibility of his subjective complaints.  (*See generally* Doc. 14 at 5-9)  When evaluating a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Next, the ALJ must make specific findings as to the claimant's credibility.  *Id.* at 1036.  An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

**A.      The ALJ's Credibility Analysis**

The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Doc. 7-3 at 32)  However, the ALJ found his "allegations concerning the intensity, persistence and limiting effects of his symptoms are less than fully credible." (*Id.* at 31)  To support these conclusions, the ALJ considered inconsistencies between Plaintiff's testimony and actions, his level of activity, the lack of treatment received, and the objective medical evidence. (Doc. 11-3 at 18)

Plaintiff argues that "[t]he ALJ failed to articulate legally sufficient reasons" to support the adverse credibility determination. (Doc. 14 at 8)  On the other hand, the Commissioner argues, "The ALJ provided valid reasons supported by substantial evidence to discount [Plaintiff's] subjective complaints." (Doc. 19 at 5, emphasis omitted)  Significantly, the Ninth Circuit has determined factors considered by the ALJ are relevant to evaluate a claimant's credibility.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)

**1.      Conflict between Plaintiff's testimony and conduct**

The Ninth Circuit has determined an ALJ may rely upon inconsistencies with a claimant's "testimony and his own conduct" to support an adverse credibility determination.  *Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996) (an ALJ may use "ordinary techniques of credibility evaluation" including inconsistent statements "and other testimony by the claimant that appears less than candid").  Here, the ALJ noted Plaintiff "indicated he was unable to read or write," but "he was able to complete the Function Report." (Doc. 11-3 at 18)  Because Plaintiff's ability to complete the report contradicted his assertion that he could not read or write, the inconsistency between his testimony and conduct supports the adverse credibility determination.

### 2.    The medical record and lack of treatment

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility."  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained that "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins*, 261 F.3d at 857. Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").  Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible").

Here, the ALJ noted that Dr. Ratzlaff found Plaintiff "did not meet the criteria for a 5150 involuntary hold" and "did not need services from the Department of Behavioral Health."  (Doc. 11-3 at 18; *see also* Doc. 11-8 at 22)  Further, Plaintiff was "never provided with medication for mental health problems" and "had not received any other treatment for mental impairments."  (*Id.*) Similarly,

9

the ALJ noted there were "no records of treatment" for the back problems Plaintiff alleged.  (*Id.*)

Accordingly, the ALJ met his burden of identifying evidence—including findings of a physician that Plaintiff did not need treatment—undermining the credibility of Plaintiff's complaints.  Notably, the lack of a need for treatment also supports an adverse credibility determination.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").; *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe medical treatment as part of the credulity determination).  Thus, the medical record supports the adverse credibility determination.  *See Greger*, 464 F.3d at 972; *Dodrill*, 12 F.3d at 918.

3.     Level of activity

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603).  For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barchart,* 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…").  Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability.  *Orn*, 495 F.3d at 639.

In this case, the ALJ considered Plaintiff's activities—which included cleaning the living room, cutting the grass, preparing simple meals, and shopping with his mother—and concluded his activities were inconsistent with his complaints of disabling back pain.  (Doc. 11-3 at 15, 18)  However, the ALJ failed to find Plaintiff's activities could be transferred to a work setting, or state Plaintiff spent a

1    "substantial" part of his day engaged in such activities.  Moreover, the Ninth Circuit opined, "Daily

2    household chores and grocery shopping are not activities that are easily transferable to a work

3    environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008).  Thus, Plaintiff's activities of

4    daily living were not clear and convincing evidence to discount his credibility.  *See Lewis v. Apfel*, 236

5    F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the

6    claimant could function regularly in a work setting).

7    **B.      Reliance on an invalid reason**

8           When an ALJ sets forth a legally insufficient to support the adverse credibility determination,

9    the Court must consider whether the reliance on invalid reasons was a harmless error.  *See Batson v.*

10   *Comm'r of the Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2003) (applying a harmless error

11   standard where the credibility finding was invalid). The Ninth Circuit explained, "So long as there

12   remains 'substantial evidence supporting the ALJ's conclusion's on credibility' and the error 'does not

13   negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless."

14   *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1197). Here, the finding regarding Plaintiff's

15   daily activities was legally insufficient.  However, the ALJ set forth clear and convincing reasons for

16   finding Plaintiff lacked credibility—including inconsistencies between his testimony and conduct, the

17   lack of treatment, and the medical record—and the RFC determination is supported by substantial

18   evidence in the record, including the opinions of Drs. Kurpiers and Campbell, who opined Plaintiff

19   was able to perform simple, repetitive tasks, with some restrictions on interactions with others.[2]  (*See*

20   Doc. 11-8 at 34-35; Doc. 11-4 at 33)  Accordingly, the ALJ's partial reliance upon an invalid reason

21   was a harmless error.

22   ///

23

24          [2] When an examining physician such as Dr. Kurpiers forms an opinion that "rests on his own independent
     examination," the opinion is substantial evidence.   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also*
25   *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings,
     such findings are substantial evidence in support of an ALJ's ultimate decision).  The opinions of non-examining
26   physicians, such as Dr. Campbell, are substantial evidence when "consistent with other independent evidence in the
     record." *Tonapetyan*, 242 F.3d at 1149.  Because the opinion of Dr. Kurpiers was formed based upon the examination of
27   Plaintiff and administration of the IQ and memory scores, the opinion qualifies as substantial evidence. Similarly, the
     opinion of Dr. Campbell that Plaintiff is able to perform simple and repetitive tasks qualifies as substantial evidence
28   because it is consistent with the opinion of Dr. Kurpiers.

## VI.     Conclusion and Order

For the reasons set for above, the Court finds the ALJ identified clear and convincing reasons to find Plaintiff's subjective complaints lacked credibility that were "sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958.   Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ set forth clear and convincing reasons to support the adverse credibility determination, supported by substantial evidence. *Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1.     The decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Defendant's motion for summary judgment is **GRANTED**; and

3.     The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Richard Daniel Martin.

IT IS SO ORDERED.

Dated:   **September 30, 2015**                  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE